No. 14-2980

In The

## UNITED STATES COURT OF APPEALS
### For The Third Circuit

In Re: Avandia Marketing

On Appeal from the United States District Court
for the Eastern District of Pennsylvania

District Court No. 2:07-MD-01871
Honorable Cynthia M. Rufe, J.

**BRIEF OF APPELLANT GIRARDI | KEESE LAW FIRM
AND APPENDIX VOLUME I**

David S. Senoff, Esquire
**Caroselli Beachler McTiernan
& Conboy, LLC**
1845 Walnut Street, 15TH Floor
Philadelphia, PA 19103
Phone: (215) 609-1350

William R. Caroselli, Esquire
**Caroselli Beachler McTiernan
& Conboy, LLC**
20 Stanwix Street, 7TH Floor
Pittsburgh, PA 15222
Phone: (412) 391-9860

*Attorneys for Appellants
Girardi | Keese Law Firm*

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES……………………………………………………............iii

JURISDICTIONAL STATEMENTS…………………………………………1

    A.    Basis for the District Court's Subject-Matter Jurisdiction…………..1

    B.    Basis for the Court's Appeals' Jurisdiction…………………………..1

    C.    Timeliness of the Appeal……………………………………………..1

    D.    Finality………………………………………………………………..2

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW…………………2

STATEMENT OF RELATED CASES AND PROCEEDINGS………………….4

STATEMENT OF THE CASE…………………………………………………4

    A.    Statement of the Relevant Facts………………………………………5

    B.    Procedural History……………………………………………………7

    C.    Ruling Presented for Review…………………………………………8

SUMMARY OF THE ARGUMENT……………………………………………9

ARGUMENT………………………………………………………………...10

    A.    Standard of Review…………………………………………………...10

    B.    The District Court Lacked Subject Matter Jurisdiction to Assess Common Benefit Fees………………………………………………...11

    C.    The District Court Erred in Binding Counsel to an Agreement That Was Never Executed………………………………………...22

i

D.    The District Court Abused is Discretion by Imposing a Tax
        or Assessment on the Girardi Firm Without Considering the
        "Common Benefit" Work Provided by that Same Firm................24

CONCLUSION.................................................................................29

COMBINED CERTIFICATIONS

APPENDIX VOLUME I

### TABLE OF AUTHORITIES

**CASES**                                                         **PAGE**

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997)...............................23

*Bowles v. Russell*, 551 U.S. 205 (2007)....................................................................11

*Catlin v. United States*, 324 U.S. 229 (1945)...............................................................2

*Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546 (2005).......................11

*Hartland v. Alaska Airlines*, 544 F.2d 992 (9th Cir. 1976) ...............15, 16, 19, 20

*In re Air Crash Disaster at Fl. Everglades on Dec. 29, 1972,*
    549 F.2d 1006 (5th Cir. 1977)..............................................................26

*In re Baycol Products*, 2004 WL 1058105, at *3
    (D. Minn. May 03, 2004)..........................................................................17

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab.*
    *Litig.*, 582 F.3d 524, (3d Cir. 2009).....................10, 11, 13, 24, 25, 26, 28

*In re FedEx Ground Package System, Inc., Employment Practices Litigation,*
    2011 U.S. Dist. LEXIS 15237 (N.D. Ind. Feb 11, 2011).......................17

*In re Genetically Modified Rice Litig.*, 2011 U.S. Dist. LEXIS 17211
    (E.D. Mo. February 11, 2011).......................................................16, 17, 18

*In re Latex Gloves Prods. Liab. Litig.*, 2003 U.S. Dist. LEXIS 18118
    (E.D. Pa. September 5, 2003).....................................................................18

*In re Linerboard Antitrust Litigation*, 292 F.Supp.2d 644
    (E.D.Pa. 2003).......................................................................................18, 19

*In re OSB Antitrust Litig.,* 2009 US Dist. LEXIS 17361
    (E.D. Pa. March 5, 2009)........................................................................18, 19

*In re Resorts Intern., Inc.*, 372 F.3d 154
    (3d. Cir. 2004).............................................................................................23

*In re Showa Denko K.K. L-Trytophan Prod. Liab. Litig. II*, 953 F.2d 162,
   (4th Cir. 1992)..................................................................13, 16-20

*In re Vioxx Prod. Liab. Litig.*, 2013 WL 1856035
   (E.D. La Apr. 30, 2013)..................................................................21

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
   456 U.S. 694, (1982)......................................................................23

*Morgan v. Gay*, 471 F.3d 469, 472 (3d Cir. 2006), *cert denied and motion
   granted by*, 552 U.S. 940 (2007).......................................................10

*Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392
   (3d Cir. 2004)..................................................................................10

*Sederquist v. Court*, 861 F.2d 554
   (9th Cir. 1988)..................................................................................16

*Toth v. UAW*, 743 F.2d 398
   (6th Cir. 1984)..................................................................................16

## STATUTES

28 U.S.C. § 1291...............................................................................1

28 U.S.C. § 1407....................................................................1, 12,15

28 U.S.C. § 1407(a)..........................................................................13

## RULES

Fed. R. App. P. 4(a)(1)(A).................................................................2

## SECONDARY MATERIALS

15 Fed. Prac. & Proc. Juris. § 3866 (4th ed.)....................................22

Eldon E. Fallon, *Common Benefit Fees in Multidistrict Litigation*,

iv

74 La. L.Rev. 371 (2014)…......………………………………………….21

# JURISDICTIONAL STATEMENTS

### A.    Basis for the District Court's Subject-Matter Jurisdiction

This matter arises from a common benefit fee assessment award in favor of the Plaintiffs' Steering Committee ("PSC") in the Avandia Marketing, Sales Practices and Products Liability Litigation which was centralized in the United States District Court for the Eastern District of Pennsylvania before The Honorable Cynthia M. Rufe by Order of the United States Judicial Panel on Multidistrict Litigation ("MDL") on October 16, 2007, and is known as MDL No. 1871. The District Court's subject matter jurisdiction was allegedly premised upon the October 16, 2007 MDL order pursuant to 28 U.S.C. § 1407, although the District Court's subject matter jurisdiction for the Order appealed from is subject of this appeal.

### B.    Basis for the Court of Appeals' Jurisdiction

Pursuant to 28 U.S.C. § 1291, this Court has jurisdiction over this matter as it is an appeal from a final order of the United States District Court for the Eastern District of Pennsylvania.

### C.    Timeliness of the Appeal

The District Court entered its Order in this matter on May 12, 2014. Appellant filed its Notice of Appeal on June 10, 2014. This appeal is timely as it

was filed within thirty (30) days of the District Court's Order. *See* Fed. R. App. P. 4(a)(1)(A).

### D.    Finality

The District Court's May 12, 2014 Order is a final order because it ended the litigation between the Girardi|Keese Law Firm and the Avandia PSC on the merits of the issue presented, and leaves nothing else for the District Court to do but execute the judgment. *See Catlin v. United States*, 324 U.S. 229, 233, 89 L.Ed. 911, 65 S. Ct. 631 (1945).

### STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

This is an appeal of a fee assessment against Appellant Girardi | Keese Law Firm (hereinafter the "Girardi Firm" or the "Firm") and its clients.  The Girardi Firm appeals a common benefit assessment award in favor of the MDL Plaintiffs' Steering Committee and MDL Plaintiffs' Executive Committee (collectively "PSC") in all the Girardi Firm's cases and, therefore, against all of the Girardi Firm's clients whether those clients actually appeared in the MDL.  Appellant and its clients seek reversal of the common benefit assessment order, which resulted in an assessment in excess of $10,000,000 of which of 42% or a minimum of

$4,200,000[1] will be taken from the Girardi Firm's clients who were never properly before the District Court. The following issues are presented:

1.    Whether the District Court had any subject matter jurisdiction to order an assessment of common benefit fees in cases filed in California state court, which were never removed to any federal court and never transferred to the consolidated and/or coordinated proceedings before the United States District Court for the Eastern District of Pennsylvania?    (R. 59a-60a; 93a; 136a-139a; 370a-372a; and 3a-8a).

2.    Whether the District Court erred in assessing common benefit fees against the Girardi Firm and its clients based upon an alleged contract which was never previously approved by the District Court?    (R. 77a-78a; 49a; 116a; 119a; 370a-372a; and 3a-8a).

3.    Whether it was equitable, just, and appropriate to assess common benefit fees in excess of $10,000,000 where the limited evidentiary record did not support such an award and where such an award was obviously inequitable?    (R. 55a-161a; 370a-372a; and 3a-8a).

---

[1] These amounts are only the approximate minimum amounts, the actual amounts cannot be published here due to the confidential nature of the settlement agreement between the Girardi Firm, its clients and the underlying defendant, GlaxoSmithKline.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not previously been before this Court and Appellant is not aware of any other case or proceeding that is in any way related to this case that has been completed, is pending, or is about to be presented before this Court or any other court or agency, state or federal, other than the continuing proceedings pursuant to MDL 1871.

## STATEMENT OF THE CASE

The Girardi Firm represents approximately 4,000 plaintiffs with respect to personal injury claims against GlaxosmithKline ("GSK"), the maker of the diabetes drug Avandia. The overwhelming majority of the Girardi Firm cases were filed in California state court, although 25 were filed in a United States District Court and transferred to the Avandia MDL in the United States District Court for the Eastern District of Pennsylvania ("MDL 1871"). The Girardi Firm was primarily responsible for the creation and progression of the California litigation. Subsequently, the Girardi Firm was able to resolve its state court cases and the 25 cases which were transferred in to MDL 1871. This settlement was negotiated exclusively between the Firm and GSK.

Despite an agreement purporting to limit the number of assessable cases and the Girardi Firm's minimal involvement with the MDL, the PSC sought an order from the District Court assessing each of the Girardi Firm's settled cases

(regardless where they were venued). The assessment sought was 7% of the gross settlement award.

The District Court held an evidentiary hearing on the matter on March 26, 2014. The Girardi Firm submitted opposition to the PSC's request on April 7, 2014. The District Court ordered that 7% of the settlement awards be assessed against all of the Girardi Firm's Avandia cases and clients (4% against the Girardi Firm and 3% against the clients), despite the fact that only a sliver of the total cases were ever properly before the District Court in the MDL.

A.    **Statement of the Relevant Facts**

The Girardi Firm has represented persons injured as a result of taking the diabetes Avandia since 2008. (R. 66a – 3/26/14 Transcript at 12). Members of the Girardi Firm have served as lead counsel for thousands of Avandia claims being litigated in the California Judicial Counsel Coordinated Proceedings ("JCCP") which is an alternate forum to the MDL for Avandia Plaintiffs nationwide seeking to litigate their claims against GSK. (R. 4a - 5/12/14 Opinion at 2). In their efforts to advance the litigation on behalf of all JCCP plaintiffs, the Girardi Firm spent over $14,000,000 of its own money procuring and developing experts, conducting discovery and demanding documents from GSK, negotiating proposed orders, and filing and opposing numerous pre-trial motions. (R. 66a-68a – 3/26/14 Transcript

at 12-14). The Girardi Firm has made over 105 court appearances in California advancing the Avandia litigation. (R. 66a-68a – 3/26/14 Transcript p. 12-14).

On April 9, 2008 J. Paul Sizemore, Esquire, then an attorney with the Girardi Firm was appointed to the Avandia MDL Plaintiffs' Steering Committee. (R. 98a – 3/26/14 Transcript at 44). Attorney Sizemore departed the Girardi Firm in early 2009, and no one from the Girardi Firm was appointed to replace Mr. Sizemore on the PSC. (R. 72a-75a – 3/26/14 Transcript at 18-21).

On May 12, 2009, Keith Griffin, Esquire of the Girardi Firm signed an Attorney Participation Agreement with the Avandia PSC to allow attorneys Griffin and Girardi to attend a PSC meeting occurring in Philadelphia that month to discuss the litigation against GSK. (R. 101a-102a – 3/26/14 Transcript at 47-48). On August 26, 2009, three months after Attorney Griffin signed the Attorney Participation Agreement, the District Court entered Pretrial Order No. 70 ("PTO 70"), which established an Avandia Common Benefit Fund to Compensate and Reimburse Attorneys for MDL Administration and Common Benefit Work. (R. 179a). PTO 70 created a framework for other plaintiffs' attorneys and the MDL PSC to share common benefit work product in exchange for an assessment of 7% of the gross monetary recovery to be paid by an attorney (and its client) accepting MDL work. (R. 183a-194a). PTO 70 contains a definition of "covered claims" that includes all Avandia claims regardless of whether those claims are subject to

the jurisdiction of MDL 1871. (R. 184a). PTO 70 requires GSK to pay the assessment on any settled covered claim directly into the Avandia Common Benefit Fund. (R. 184a-187a). In addition, PTO 70 approved and attached a form Attorney Participation Agreement, which was different from the agreement signed by Attorney Griffin. (*Cf.* R. 196a-200a *with* R. 208a-211a) Neither Attorney Griffin nor anyone from the Girardi Firm ever signed the Agreement approved by and attached to PTO 70. (R. 4a Opinion at 2). (confirming that Attorney Griffin signed an Agreement prior to the entry of PTO 70).

In 2012 the Girardi Firm settled its state court and federal court Avandia claims together in one master settlement agreement negotiated exclusively by Attorney Girardi. (R. 5a– 5/12/14 Opinion at 3; 68a– 3/26/14 Transcript at 14). On October 9, 2012, all 25 Girardi Firm MDL cases were placed in administrative suspense pending conclusion of the Master Settlement Agreement between the Girardi Firm and GSK. (R. 201a - Docket No. 2740).

### B.   Procedural History

On March 13, 2014 the PSC filed a Motion for Order to Show Cause requiring the Girardi Firm to explain why it and its clients are not subject to PTO 70's common benefit assessment. (R. 14a – docket entries). The PSC alleged that it learned from counsel for GSK that the Girardi Firm was contesting payment of the common benefit assessment. (R. 61a – 3/26/14 Transcript at 7). On March 26,

2014, only thirteen (13) days after the filing of the PSC's motion, the District Court held a hearing on the matter in which the members of the Girardi Firm were only able to appear by videoconference. (R. 55a – 3/26/14 Transcript). On April 7, 2014, after the hearing had occurred, Appellant was permitted to file a written response to the PSC's motion, and the PSC filed a reply memorandum seven days later. (R. 25a; 29a – docket entries).

On May 12, 2014, the District Court issued an Order granting the PSC's motion, finding that all Girardi Firm settled cases were subject to the PTO 70 assessment, and directing GSK to hold back the 7% assessment and deposit it into the Avandia Common Benefit Fund. (R. 3a – 5/12/14 Order). On June 10, 2014, this timely appeal challenging the District Court's Order was noticed and filed. (R. 1a).

## C.    <u>Ruling Presented for Review</u>

Appellant seeks reversal of the District Court's May 12, 2014 common benefit assessment order as it relates to the non-MDL cases settled by the Girardi Firm. The Firm does not dispute that common benefit fees should be assessed on the 25 cases included in the October 4, 2012 Stipulation and Order to Place Cases in Administrative Suspense. (R. 201a). However, the Girardi Firm does challenge the subject matter jurisdiction of the District Court to assess the common benefit fee against cases and clients that had no connection whatsoever with the MDL, as

well as the equity of assessing fees against the Girardi Firm cases without undertaking an analysis of the substantial independent contributions of the Girardi Firm to the Avandia litigation as a whole.

## SUMMARY OF THE ARGUMENT

Confusing procedural power with subject matter jurisdiction, and thereby assuming subject matter jurisdiction where there was none, the District Court issued a Pretrial Order (PTO 70), which imposed a tax, or assessment, on any counsel involved in any litigation (state or federal; filed or unfiled). The Court then used that non-existent jurisdiction to bind the Girardi Firm to the terms of the Pretrial Order and form Participation Agreement never executed by Girardi Firm to impose a multi-million dollar tax or assessment on every case settled by the Firm, including thousands of cases never transferred to the District Court as part of the MDL.

After impermissibly imposing that tax on both the Firm and the individual claimants, the District Court then applied its unilateral Pretrial Order in an uneven and one-sided fashion by applying only the assessment while, at the same time, failing to provide a single cent of compensation for the undisputed millions of dollars of "common benefit" work product provided by the Girardi Firm.

Numerous federal courts throughout the country have consistently held that a MDL transferee court does not have subject matter jurisdiction to impose a tax or

assessment under the auspices of "common benefit" obligations in connection with state court cases and federal cases never transferred to the MDL. Similarly, this Court has held that, even where a "common benefit" assessment is appropriate, the District Court is required to undertake a comprehensive analysis to ensure that plaintiffs' counsel approved by the Court to assist in the MDL is not unjustly enriched, an analysis never undertaken by the District Court in this case.

The District Court's decision was legally flawed in all respects. It must be set aside on both a legal and equitable basis.

## ARGUMENT

### A.    Standard of Review

The standard of review for issues of subject matter jurisdiction is plenary. *See Morgan v. Gay*, 471 F.3d 469, 472 (3d Cir. 2006), *cert denied and motion granted by,* 552 U.S. 940, 128 S. Ct. 66, 169 L. Ed. 2d 243 (2007), *citing Samuel-Bassett v. KIA Motors Am., Inc.,* 357 F.3d 392, 396 (3d Cir. 2004). That standard applies to the first issue presented on appeal.

A district court's fee determination is subject to review for an abuse of discretion, which can occur if the judge fails to apply the proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous. *See In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine)*

*Prod. Liab. Litig.,* 582 F.3d 524, 538 (3d Cir. 2009). That standard applies to the second and third issues presented on appeal.

### B.    The District Court Lacked Subject Matter Jurisdiction to Assess Common Benefit Fees

It is axiomatic that the district courts of the United States are courts of limited subject matter jurisdiction. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 552, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005). They possess only the jurisdiction authorized them by the United States Constitution and by federal statute. *See Bowles v. Russell*, 551 U.S. 205, 127 S. Ct. 2360, 2365, 168 L. Ed. 2d 96 (2007). In this matter, proceedings were centralized in the United States District Court for the Eastern District of Pennsylvania before The Honorable Cynthia M. Rufe by Order of the United States Judicial Panel on Multidistrict Litigation on October 16, 2007, creating what is known as MDL No. 1871, *In Re: Avandia Marketing, Sales Practices and Products Liability Litigation.*

In the present case, the District Court taxed the Girardi Firm an assessment of 7% for every single settled case, even those never before the MDL, pursuant to the following provision of PTO 70:

> This Order applies to the following Avandia, Avandamet, and Avandaryl (hereinafter collectively referred to as "Avandia") claims, whether direct or derivative:
>
> a. *All* Avandia *claims* now or hereafter subject to the jurisdiction of MDL 1871, whether disposed of before or after remand *regardless of whether*

11

*counsel holding a fee interest in such Avandia claims in such cases have signed the Participation Agreement*, including:

> i. All Avandia claims settled pursuant to an MDL supervised Settlement Agreement between the parties;
> ii. All Avandia claims on tolling agreements; and
> iii. All Avandia claims in which any PSC member has a financial interest.

b. *All* Avandia *claims, regardless of whether those claims are subject to the jurisdiction of MDL 1871, tolled, unfiled, or filed in another jurisdiction*, in which the following attorneys have a fee interest, including but not limited to:

> i. Protective Order: Those attorneys who executed the Endorsement of Protective Order, attached to Pretrial Order No. 10, and
>
> ii. Participating Counsel: Members of the PSC and plaintiffs' attorneys who sign on to the Participation Agreement, attached hereto as Exhibit 1.

(Collectively hereinafter referred to as the "Covered Claims").

(R. 184a-PTO 70, Par. 3 (emphasis added)).

Presumably, the District Court concluded that it had jurisdiction pursuant to

28 U.S.C. § 1407, which provides, in pertinent part:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

28 U.S.C. § 1407(a). A district court's power to coordinate pretrial proceedings, however, is not unlimited. Rather, it can only be exercised consistent with the limits of subject matter jurisdiction.

Although the Third Circuit has not had occasion to address this issue,[2] other federal courts routinely and virtually without exception have held that such an Order is beyond the scope of a federal court's jurisdiction.

The leading case on this issue is *In re Showa Denko K.K. L-Trytophan Prod. Liab. Litig. II*, 953 F.2d 162 (4th Cir. 1992). *In re Showa Denko* involved multidistrict litigation arising out of personal injury damage claims resulting from the ingestion of pills containing the amino acid L-Tryptophan. *Id.* at 164. The case was centralized in the United States District Court for the District of South Carolina. *Id.* The District Court there entered a pretrial order assessing a hold back on all L-Tryptophan claims in the United States pursuant to the common benefit doctrine to provide a funding mechanism and reimburse members of a plaintiffs' steering committee for discovery generated expenses. Before the district court, the defendant unsuccessfully challenged the pretrial order on the basis that

---

[2] In its Opinion, the District Court cited this Court's decision in *In re Diet Drugs*, 582 F.3d 524, 546-47 (3d. Cir. 2009). In *In re Diet Drugs*, however, the Court never addressed the subject matter jurisdiction issue. *Id.* at 553 ("Thus, while Riepen may challenge the attorneys' fees and cost assessments that were imposed on him, he cannot do so by attacking subject matter jurisdiction on a case that was dismissed with prejudice almost ten years ago.").

its scope would impair its ability to defend and settle the pending state court cases

which were not part of the MDL. *Id.* at 164-65.  On appeal, the United States

Court of Appeals for the Fourth Circuit addressed a provision seeking to impose

the assessment on all cases (regardless of jurisdiction) virtually indistinguishable

from the provision ordered by the District Court in this case:

> Paragraphs 2 and 3 of Order No. 7 require plaintiff's counsel to contribute
> $1,000 and 0.5% of the value of settlement or verdict "in all cases presently
> filed or later filed in these proceedings."  While these paragraphs apparently
> limit their scope to parties to the litigation before the court, paragraph 4
> applies the obligations of paragraphs 2 and 3 "to actions venued in state
> courts, untransferred federal cases, and unfiled claims in which any MDL
> defendant is a party or payor." The order thus compels contributions from
> plaintiffs in state or federal litigation who are not before the court and by
> claimants who have chosen not to litigate but to compromise their claims
> outside of the court.

*Id.* at 166.

The Fourth Circuit then held that such a provision was beyond the District

Court's jurisdiction:

> Contrary to the suggestion of the plaintiffs' steering committee, this
> impermissible reach of paragraph 4 is not mitigated by the opportunity under
> paragraph 5 to obtain a waiver of assessments by petitioning the district
> court. To take advantage of this opportunity, the claimant is compelled to
> file a petition in the district court, yet the court has no jurisdiction to compel
> such a procedure in the first instance. Claimants who have not sued and
> plaintiffs in state and untransferred federal cases have not voluntarily
> entered the litigation before the district court nor have they been brought in
> by process. The district court simply has no power to extend the obligations
> of its order to them.

The authority for consolidating cases on the order of the judicial panel on multi-district litigation, however, is merely procedural and does not expand the jurisdiction of the district court to which the cases are transferred. While § 1407 provides a procedure for transferring cases filed in different districts to a single district court for pretrial proceedings, nowhere does it expand the jurisdiction of either the transferor or the transferee court. As in any other case, a transferee court's jurisdiction in multi-district litigation is limited to cases and controversies between persons who are properly parties to the cases transferred, and any attempt without service of process to reach others who are unrelated is beyond the court's power.

*Id*. at 165-166.

Similarly, in *Hartland v. Alaska Airlines*, 544 F.2d 992 (9th Cir. 1976), several actions were centralized in the United States District Court for the Northern District of California resulting from a September 4, 1971 crash of an Alaska Airlines Plane. *Id*. at 993. The crash caused the death of all 111 persons aboard. *Id*. Despite the centralization and creation of a MDL, more than 30 other actions were also pending in the state courts of Washington and Alaska. *Id*. The district court created a common benefit fund requiring all plaintiffs to reimburse plaintiffs' liaison counsel for the expenses incurred in discovery. *Id*. 995-96. When settlements were reached with two plaintiffs outside the MDL, defendant conditioned the settlements on approval of the district court. *Id*. The district court approved the settlements, but ordered counsel to pay part of the recoveries to the common benefit fund. *Id*. at 997; 1000. The two settling plaintiffs appealed. *Id*. at 1000. On appeal, the United States Court of Appeals for the Ninth Circuit

succinctly held that the district court "had not even a semblance of jurisdiction" to require non-parties to contribute to a common benefit fund. *Id.* at 1002.[3]

Consistent with (and relying on) this authority, other federal district courts appropriately have recognized the limits of their subject matter jurisdiction and have rejected similar attempts to impose such improper assessments. For example, in *In re Genetically Modified Rice Litig.*, 2011 U.S. Dist. LEXIS 17211 (E.D. Mo. February 11, 2011), the plaintiffs' leadership group filed a motion with the district court to compel a party to contribute a portion of any recovery it received in a similar state court case to the common benefit fund established in the MDL. *Id.* at *176-77. The common benefit order in *Genetically Modified Rice*, however, is limited only to federal cases. *See id.* at *177-78. The district court specifically stated in the common benefit order that it lacked jurisdiction over the state court cases. *See id.* In rejecting the leadership group's motion to compel, the court relied on the *Showa Denko* and *Hartland* decisions, and stated that simply because a court has jurisdiction over an attorney, defendant, or a plaintiff in one case does not mean that it has jurisdiction over them in their state court cases, even if they assert essentially the same claims. *See id.* ("Plaintiffs' leadership group asks me to include the state court cases in this order, so that defendants would be required

---

[3] Other courts have determined that the substantial benefit doctrine does not create subject matter jurisdiction. *See Sederquist v. Court*, 861 F.2d 554 (9th Cir. 1988); *Toth v. UAW*, 743 F.2d 398 (6th Cir. 1984).

to hold back and contribute a portion of any settlements or judgments from those cases as well as from the MDL cases. As stated above, I do not have jurisdiction to do this."); *see also In re Baycol Products*, 2004 WL 1058105, at *3 (D. Minn. May 3, 2004) ("[A] transferee court's jurisdiction in multi-district litigation is limited to cases and controversies between persons who are properly parties to the cases transferred.") (citing *Showa Denko*) (additional citation omitted).

In *In re FedEx Ground Package Sys.*, the United States District Court for the Northern District of Indiana denied the motion of the plaintiffs' co-lead counsel and plaintiffs' steering committee ("co-lead counsel") for the entry of a common benefit set-aside order. *See In re Fed Ex Ground Package Sys*, 2011 U.S. Dist. LEXIS 15237 at *19. The FedEx litigation related to the employment classification of the plaintiff drivers. *See id.* at *2. While the district court rejected the request to create a common benefit fund (*id.* at *15), it did address the jurisdictional issues presented by the request and cited favorably *Showa Denko* and *Genetically Modified Rice*. Appropriately, the District Court held:

> This court has jurisdiction to ensure the fair and equitable distribution of attorneys' fees among the various plaintiffs' attorneys in this MDL litigation, including any MDL member case filed in, removed to, or transferred to this court under the auspices of this litigation. This court doesn't have jurisdiction over cases never actually before this court, whether state or federal, even though it's possible that attorneys in state or federal cases might use the work done by co-lead and MDL counsel before this court.

. . . .

17

Thus, co-lead counsel's proposed language applying their proposed order to cases "derivative" of the MDL or that "rely on the work performed in the MDL" is outside the scope of this court's power to order. Co-lead counsel can seek to avoid unjust enrichment by local plaintiffs' attorneys in cases not before this court, but they can't do so in the way they proposed.

*Id.*, at *7.

In this Circuit, district courts have also ruled in similar fashion. *In re OSB Antitrust Litig.*, 2009 US Dist. LEXIS 17361 (E.D. Pa. March 5, 2009); *In re Linerboard Antitrust Litigation*, 292 F.Supp.2d 644, 664 (E.D.Pa. 2003) ("The Court agrees with Georgia–Pacific on this issue and concludes on the present state of the record that any order sequestering funds from settlements and other recoveries in the tag-along actions should not extend to nontransferred cases.").[4]

---

[4] The decision of *In re Latex Gloves Prods. Liab. Litig.*, 2003 U.S. Dist. LEXIS 18118 (E.D. Pa. September 5, 2003) is, at best, an outlier decision and does not support the District Court's Order in this case. In *Latex Gloves*, while acknowledging that the *Showa Denko* decision was entitled to deference even though not controlling, the district court found that the pretrial order in *Showa Denko* was far more sweeping than the common benefit assessment order in the *Latex Glove* case. *See In re Latex Gloves*, 2003 U.S. Dist. LEXIS 18118 at *5. The court in *Latex Gloves* found that its assessment order was limited to plaintiffs who had access to the discovery materials in MDL depository, and therefore did not engage in an analysis of the subject matter jurisdiction of the court to apply the assessment to an out-of-state plaintiff not properly before the Court. *See id. See also In re Genetically Modified Rice Litig.*, ("Although reaching the same result as *Latex Gloves* might be in the interest of justice, it is not allowed by the law. I have no jurisdiction over the state cases and I cannot order the defendants to withhold amounts they may end up owing the state plaintiffs.").

*In re OSB Antitrust Litig.,* was a class action regarding an alleged horizontal price-fixing conspiracy among nine major manufacturers of Oriented Strand Board (a wood product used in construction). *Id.* at 7-8.  Several entities opted out of certain settlement classes and the litigation class, only later to reach their own settlement agreements with the original defendants. *See id.* at *8-9.  Class counsel then sought an order compelling the opt-out plaintiffs to pay attorneys' fees to class counsel under the common fund doctrine. *See id.*  The United States District Court for the Eastern District of Pennsylvania, citing *Show Denko* and *Alaska Airlines*, held that it lacked subject matter jurisdiction over the opt-out plaintiffs and refused to order the payment of attorneys' fees to class counsel by the non-party, opt-out plaintiffs. *See id.* at *13-14.

*In re Linerboard Antitrust Litig.*, involved several antitrust class actions against the manufacturers of corrugated boxes and sheets that were centralized into an MDL. *See* 292 F.Supp.2d at 648.  A class was certified, and a preliminary settlement was reached. *See id.* at 649.  After receiving certain requested discovery material to determine whether to participate in the settlement, approximately 140 prospective class members chose to opt-out of the proposed class settlement and instead filed tag-along actions in district courts across the country. *See id.* at 652.  In light of the opt-outs and subsequent tag-along actions, the plaintiffs' lead and liaison counsel filed a motion in the MDL seeking an order

19

to establish an escrow fund and a procedure to insure that they were compensated for work they asserted benefitted the former class members. *See id.* at 647-648. Lead and liaison counsel requested an assessment to apply to all cases, including nontransferred federal cases, and state cases. *See id.* One of the defendants and the tag-along plaintiffs opposed the motion, arguing that the district court lacked jurisdiction to order the sequestration of funds from cases that had not been formally transferred to it. *See id.* at 663. Once again, citing *Showa Denko* and *Alaska Airlines*, the United States District Court for the Eastern District of Pennsylvania concluded that it did not have jurisdiction to order sequestration of funds from settlements and recoveries in nontransferred cases. *See id.* at 664.

Despite the limits of its jurisdiction, the District Court in this case nevertheless made it crystal clear that a tax or assessment was required on <u>every single case wherever located</u>:

> [T]he Court finds that *all settled claims* in which the Girardi Keese firm has a financial interest, regardless of whether they were filed in state or federal court, and regardless of when the firm was retained, are "assessed cases" and "covered claims" as defined by the terms of the Attorney Participation Agreement and PTO 70, and thus are subject to a Common Benefit Assessment under PTO 70. GSK shall hold back a 7% assessment on the gross recovery, with 4% deducted from attorneys' fees and 3% from the clients' shares of the gross monetary recovery, and deposit the 7% assessment in the Avandia Common Benefit Fund.

(R. 7a-8a-5/12/14 Opinion at 5-6). As there was no jurisdiction for this judicial overreaching, it must be set aside.

This is particularly true where, as here, the District Court compounded its improper exercise of jurisdiction by imposing 3% of its tax directly on the plaintiffs/claimants, who were <u>never</u> before the Court. As recognized by one of the leading jurists in multi-district litigation, there is a fundamental difference between class actions and multi-district litigation, which prevents the taxing of claimants for purported "common benefit" work:

> As class actions morph into multidistrict litigation, as is the modern trend, the common benefit concept has migrated into the latter area. The theoretical bases for the application of this concept to MDLs are the same as for class actions, namely equity and her blood brother, quantum meruit. However, there is a difference. In class actions the beneficiary of the common benefit is the claimant; in MDLs the beneficiary is the primary attorney. MDL courts have consistently cited the common fund doctrine as a basis for assessing common benefit fees in favor of attorneys who render legal services beneficial to all MDL plaintiffs. It is because of this distinction between class actions and MDLs—the fact that the primary beneficiary in MDLs is the attorney, rather than the claimant—that "the common benefit fee is extracted from the fee of the primary attorney and not the claimant" in MDLs.

*In re Vioxx Prod. Liab. Litig.,* 2013 WL 1856035 (E.D. La Apr. 30, 2013) (citations omitted). *See also* Eldon E. Fallon, *Common Benefit Fees in Multidistrict Litigation*, 74 La. L.Rev. 371, 376 n. 27 (2014) ("Thus in MDLs, the claimant does not pay the common benefit fee; the primary attorney who is the beneficiary of the common benefit work pays it.") (collecting cases). On this basis as well, the District Court's Order must be set aside as an impermissible exercise of subject matter jurisdiction.

In sum, the District Court lacked subject matter jurisdiction to assess common benefit fees for non-MDL cases, and certainly lacked authority to impose any fee directly on individual claimants. The District Court's Order must be reversed and vacated and, on remand, the District Court should be limited to imposing a fee only on the cases properly before it in the MDL.

## C. The District Court Erred in Binding Counsel to an Agreement That Was Never Executed

Apart from exercising jurisdiction it never possessed, the District Court separately (and improperly) concluded that it could impose a tax or assessment upon the Girardi Firm based on a form Participation Agreement never executed by the Firm. In particular, although glossed over in the Opinion, the basis of the District Court's Opinion, PTO 70, merely approved a form Participation Agreement on a going forward basis *i.e.* after the Girardi Firm already had been representing hundreds, if not thousands, of its clients. Under the District Court's erroneous view, the Firm could be surcharged millions of dollars based on a subsequent Court Order. Thus, the entire underpinning of the District Court's ruling falls away. The District Court cited no authority for its holding that it could bind a party to an agreement never executed. *See generally* 15 Fed. Prac. & Proc. Juris. § 3866 (4th ed.) ("[A] transferee judge has no jurisdiction to impose obligations on one who is not a party to one of the transferred cases.").

22

To salvage the District Court's Order, Appellees undoubtedly will rely (as did the District Court) on Counsel's earlier agreement concerning the payment of an assessment. But nothing in that earlier agreement even suggested, let alone stated, that the Girardi Firm would consent to the District Court's subject matter jurisdiction over every single filed case in the future. Nor could it as it is well settled that parties cannot consent to federal court subject matter jurisdiction. As held by this Court in *In re Resorts Intern., Inc.*, 372 F.3d 154 (3d. Cir. 2004):

> Subject matter jurisdiction "cannot be conferred by consent" of the parties. Where a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization. Similarly, if a court lacks jurisdiction over a dispute, it cannot create that jurisdiction by simply stating it has jurisdiction in a confirmation or other order.

*Id.* at 161; *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 73 (1997) ("[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it.") (citations omitted); *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("Subject-matter jurisdiction, then, is an Art. III as well as a statutory requirement; it functions as a restriction on federal power, and contributes to the characterization of the federal sovereign. Certain legal consequences directly

follow from this. For example, no action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant [.]").[5] Accordingly, the District Court also erred in binding Counsel to an agreement never executed and to an earlier agreement, which it lacked jurisdiction to enforce.

### D. The District Court Abused its Discretion by Imposing a Tax or Assesement on the Girardi Firm Without Considering the "Common Benefit" Work Provided by that Same Firm

Finally, the District Court adopted the PSC's request to selectively enforce the form Participation Agreement that benefited the PSC without providing the Girardi Firm with the corresponding benefit of compensation provided under the terms of the agreement mandated by the Court. Specifically, the District Court found that it was appropriate to impose an assessment because the Firm had used "MDL Work Product", at least in part, in litigating his cases prior to settlement. (R. 5a-6a-5/12/14 Opinion at 3-4). According to the District Court, this mere use was sufficient to trigger an assessment. (R. 6a-5/12/14 Opinion at 4 n. 4 (citing *In re Diet Drugs*, 582 F.3d 524, 546-47 (3d. Cir. 2009)). The District Court thus chose to make the entire assessment based on the assumption that it would be inequitable for the Girardi Firm to use work product of the MDL without being fully taxed with a corresponding assessment for any use of that work product no

---

[5] To eliminate any concern as to purported "unjust enrichment", the Girardi Firm agreed to an assessment for over 400 cases pending at the time the earlier agreement was signed. Both the District Court and the PSC, however, summarily dismissed this offer.

matter how *de minimis*. The District Court, however, failed to perform the complete analysis mandated for its "common benefit" assessment.

As recognized by this Court in *In re Diet Drugs*, such an assessment is appropriate (where commensurate with a District Court's jurisdiction), "where 'the plaintiff's successful litigation confers a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them.'" *Id.* at 546 (citations omitted). To that end, the form Participation Agreement imposed on the Girardi Firm by the Court provided that *any* counsel subject to its terms would be separately compensated for "common benefit" work. In particular, in reaching its Opinion, the District Court ignored a critical term of the form Participation Agreement it imposed on the Girardi Firm, which provided, in pertinent part:

> Participating Counsel may apply to the Court for common benefit fees and reimbursement of expenses, provided that Participating Counsel:
>
> a. were called upon by the PSC to assist it in performing its responsibilities;
>
> b. expended time and efforts for the common benefit either in MDL 1871, the CA JCCP, or the PA MTP [.].

(R. 198a- PTO 70 Form Participation Agreement, Paragraph 5). Thus, if the Firm was going to be charged an assessment for "common benefit" work, it also was

entitled to receive credit or compensation for any "common benefit" work separately performed by the Firm.

In failing to undertake any analysis of the "common benefit" work performed by the Girardi Firm, the District Court separately erred as such an analysis was mandated to ensure appropriate judicial review:

> That is not to say, however, that the District Court can ignore basic principles of fairness in applying an assessment. Florida Everglades [*In re Air Crash Disaster at Fl. Everglades on Dec. 29, 1972*, 549 F.2d 1006 (5th Cir. 1977)] is not to the contrary. Indeed, the Fifth Circuit vacated the fee award and remanded so that the district court could conduct a "hearing in the full sense of the word" and enter findings of fact and conclusions of law from which the court of appeals could determine whether the award constituted a fair and just enrichment of the plaintiffs' committee, should the district court's decision be appealed. *Id.* at 1021.
>
> Likewise, we must ensure that the District Court granted Class Counsel a just award in this case. Whether we do so by applying the common benefits doctrine or independently assessing whether the District Court properly exercised its managerial power is of no real consequence. No matter how we label our analysis, we must determine whether the Court abused its discretion in concluding that Class Counsel conferred a substantial benefit on the initial opt-out and PPH plaintiffs or in how it spread the burden of the assessment among claimants who recovered outside of the Settlement Agreement.

*In re Diet Drugs*, 582 F.3d at 547; *id.* at 550 ("Certainly, limits on the reasoning behind an award may lead to the conclusion that the award itself cannot stand.").

Here, the only evidence of record was the over fourteen million dollars of time and expense incurred by the Girardi Firm. The District Court ignored the uncontradicted evidence of that work and simply imposed the assessment without

any consideration or offset. The PSC, however, could not and cannot have it both ways. It could not seek the Court's imprimatur to tax the Firm pursuant to an unexecuted form Participation Agreement but then ignore its own separate corresponding obligation to provide compensation to those, like the Girardi Firm, who risked millions of dollars to secure a favorable financial resolution on behalf of its own clients as well as untold thousands of others.

Inexplicably, the Court used the Girardi Firm's own work product as support for its assessment without any recognition that such work entitled the Firm to separate compensation:

> The Court does not doubt that Girardi Keese expended significant time and money litigating its cases. Girardi Keese represents thousands of clients, and needed to incur the cost of obtaining and reviewing medical records for each of those clients, regardless of whether or not the firm used MDL work product. In addition, the Court does not doubt that the firm incurred costs associated with state court motions practice and court appearances. However, Girardi Keese's litigation expenses are not sufficient to establish that the firm did not use MDL work product, especially in light of the contrary evidence. The evidence before the Court establishes that Girardi Keese did not rely solely on its own work in advancing its Avandia litigation, but received and relied upon MDL work product to resolve its cases.

(R. 6a- 5/12/14 Opinion at 4).   The District Court, however, had no discretion to analyze only the issue of whether the multi-million dollar assessment on the Girardi Firm resulted in unjust enrichment to the PSC (particularly in light of the undisputed evidence of record as to the work performed by the Girardi Firm) and fail to require the development of a corresponding record demonstrating the work

27

performed by the PSC, which purportedly justified the multi-million dollar assessment. *See generally In re Diet Drugs*, 582 F.3d at 550 n. 52 ("We do not imply that there are no limits on how the burden of a fee assessment may be distributed among individuals or subclasses who have received a common benefit. Basic concerns for fairness and due process always circumscribe judicial discretion.").

As a result, the District Court employed none of the analysis required for the imposition of a multi-million dollar tax. Instead, the District Court summarily concluded there was a "common benefit" and then simply ordered multiplication to impose the amount against the Girardi Firm. Nothing in the case law permits such a cursory analysis.

As held by this Court:

> The operative question is whether the costs of recovery were "shifted with some exactitude" to the beneficiaries of Class Counsel's efforts—i.e., the parties who recovered from Wyeth.

*Id.* at 551 n. 53. The record as it is currently constituted is devoid of any such "exactitude."

Akin to the Colonial cry of "taxation without representation," the Girardi Firm was only taxed but deprived of compensation for the millions of dollars of work separately performed on behalf of its own clients as well as the MDL, including the PSC itself. Inequity takes many forms and this is one of them. That

omission irretrievably flawed the District Court's "common benefit" analysis to its core. The District Court's "common benefit" assessment must be set aside on this basis as well.

## **CONCLUSION**

For all of the foregoing reasons, the May 12, 2014 Order of the District Court should be reversed and vacated as it relates to all Girardi Firm Avandia cases other than the twenty-five (25) cases included in the October 4, 2012 Stipulation and Order to Place Cases in Administrative Suspense.

CAROSELLI BEACHLER MCTIERNAN & CONBOY

By: s/ David S. Senoff
DAVID S. SENOFF, ESQUIRE
PA. ATTY. I.D. NO. 65278

1845 WALNUT STREET, FIFTEENTH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
T: (215) 609-1350
F: (215) 609-1351
DSENOFF@CBMCLAW.COM

WILLIAM R. CAROSELLI, ESQUIRE
PA. ATTY. I.D. NO. 00452

20 STANWIX STREET, SEVENTH FLOOR
PITTSBURGH, PENNSYLVANIA 15222
T: (412) 391-9860
F: (412) 391-7453
WCAROSELLI@CBMCLAW.COM

ATTORNEYS FOR APPELLANT
GIRARDI | KEESE LAW FIRM

## COMBINED CERTIFICATIONS

## CERTIFICATION OF BAR MEMBERSHIP

I hereby certify that I am counsel of record for Appellant Girardi | Keese Law Firm in this matter and that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

## CERTIFICATION OF COMPLIANCE WITH RULE 32(a)

This brief complies with Fed. R. App. P. 32(a) as it is less than 30 pages in length.

## CERTIFICATION OF IDENTICAL COMPLIANCE OF BRIEFS

I hereby certify that the text of the electronically filed brief and the copies of the brief filed in paper format for Appellant are identical.

## CERTIFICATION OF VIRUS SCAN

I hereby certify that a virus check was performed upon the brief for Appellant utilizing Trend Micro Security Agent and no virus was detected.

## CERTIFICATION OF SERVICE

I, David S. Senoff, Esquire, hereby certify that all counsel of record have consented to electronic service pursuant to L.A.R. 31.1(d) and will be served with Appellant's brief through the court's electronic docketing system (CM/ECF).

CAROSELLI BEACHLER MCTIERNAN & CONBOY

By: _____ s/ David S. Senoff _____

DAVID S. SENOFF, ESQUIRE
PA. ATTY. I.D. NO. 65278

1845 WALNUT STREET, FIFTEENTH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
T: (215) 609-1350
F: (215) 609-1351
DSENOFF@CBMCLAW.COM

WILLIAM R. CAROSELLI, ESQUIRE
PA. ATTY. I.D. NO. 00452

20 STANWIX STREET, SEVENTH FLOOR
PITTSBURGH, PENNSYLVANIA 15222
T: (412) 391-9860
F: (412) 391-7453
WCAROSELLI@CBMCLAW.COM

ATTORNEYS FOR APPELLANT
GIRARDI | KEESE LAW FIRM

No. 14-2980

In The

## UNITED STATES COURT OF APPEALS
### For The Third Circuit

In Re: Avandia Marketing

On Appeal from the United States District Court
for the Eastern District of Pennsylvania

District Court No. 2:07-MD-01871
Honorable Cynthia M. Rufe, J.

### APPENDIX
#### Volume I of III (pages 1a – 8a)

David S. Senoff, Esquire
**Caroselli Beachler McTiernan
& Conboy, LLC**
1845 Walnut Street, 15th Floor
Philadelphia, PA 19103
Phone: (215) 609-1350

William R. Caroselli, Esquire
**Caroselli Beachler McTiernan
& Conboy, LLC**
20 Stanwix Street, 7th Floor
Pittsburgh, PA 15222
Phone: (412) 391-9860

*Attorneys for Appellants
Girardi | Keese Law Firm*

TABLE OF CONTENTS

PAGE

**Volume I**

June 10, 2014 Notice of Appeal of Girardi | Keese Law Firm.......................1a

May 12, 2014 Order of the Honorable Cynthia M. Rufe, J...........................3a

**Volume II**

Relevant docket entries from In Re: Avandia Marketing, Sales Practices and
Products Liability Litigation U.S.D.C. E.D. Pa. No. 2:07-MD-01871...............9a

March 26, 2014 Transcript of Hearing before the Honorable Cynthia M. Rufe
        United States District Judge.................................................55a

Pretrial Order No. 10.................................................................162a

Pretrial Order No. 70.................................................................179a

October 4, 2012 Stipulation and Order to Place Cases in Administrative
        Suspense.....................................................................201a

May 12, 2009 Attorney Participation Agreement...................................204a

**Volume III**

May 12, 2009 Attorney Participation Agreement...................................208a

August 31, 2009 Correspondence from Vance R. Andrus, Esquire to
Nina Gussak .........................................................................212a

*LaVoise* Plaintiff's Exhibit List....................................................218a

*LaVoise* Witness List................................................................318a

April 23, 2014 Transcript of Hearing before the Honorable Cynthia M. Rufe
        United States District Judge.................................................331a

i

March 24, 2014 Affidavit of Thomas V. Girardi in Response to Order
    To Show Cause RE: PTO No. 70 and Order Setting Hearing
    On GSK's Temporary Restraining Order……………………………..370a

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: AVANDIA MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL No. 1871<br>07-md-1871<br><br>Hon. Cynthia M. Rufe |
| This Document Applies to:<br><br>The Girardi Keese Law Firm | |

## NOTICE OF APPEAL

NOTICE IS HEREBY GIVEN that the Girardi | Keese Firm (hereinafter "Girardi Firm") hereby appeals to the United States Court of Appeals for the Third Circuit from the May 12, 2014 order granting common benefit fees to be assessed against all Girardi Firm cases (Dkt. No. 4001).

DATED:  June 10, 2014

Respectfully submitted,

GIRARDI | KEESE

By: _____ /s/ Thomas V. Girardi
THOMAS V. GIRARDI
KEITH D. GRIFFIN
1126 Wilshire Boulevard
Los Angeles, CA 90017
Tel: (213) 977-0211
Fax: (213) 481-1554
tgirardi@girardikeese.com
kgriffin@girardikeese.com

Attorneys for Appellant Girardi & Keese

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 10, 2014, I electronically filed the foregoing

document entitled NOTICE OF APPEAL with the Clerk of the Court using the CM/ECF system,

which will provide notice of electronic filing to all counsel of record.

DATED:  June 10, 2014                    Respectfully submitted,

                                         GIRARDI | KEESE

                                         By:    _/s/ Keith D. Griffin_
                                                THOMAS V. GIRARDI
                                                KEITH D. GRIFFIN
                                                1126 Wilshire Boulevard
                                                Los Angeles, CA 90017
                                                Tel: (213) 977-0211
                                                Fax: (213) 481-1554
                                                tgirardi@girardikeese.com
                                                kgriffin@girardikeese.com

                                                Attorneys for Appellant Girardi & Keese

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE: AVANDIA MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL No. 1871<br>07-md-01871 |
| THIS DOCUMENT APPLIES TO: | **FILED**<br>MAY 12 2014 |
| The Girardi Keese Law Firm | MICHAEL E. KUNZ, Clerk<br>By_____ Dep. Clerk |

## ORDER

RUFE, J.                                                                                    May 12, 2014

The Plaintiffs' Advisory Committee moved the Court to issue an Order to Show Cause, requiring the Girardi Keese law firm to appear and show cause why its entire inventory of settled Avandia cases should not be subject to Pretrial Order ("PTO") No. 70's Common Benefit Assessment.[1] The Court issued such an Order and held a hearing on March 26, 2014, on the issue of whether Girardi Keese is subject to the Common Benefit Assessment on all cases in which it has a financial interest.

PTO 70, which the Court entered on August 26, 2009, authorized the creation of an Avandia Common Benefit Fund, for the purpose of compensating and reimbursing attorneys for services performed and expenses incurred for the common benefit of Avandia claimants. Pursuant to PTO 70, all cases in which Plaintiff's Steering Committee ("PSC") members have a financial interest are subject to the common benefit assessment. In addition, non-PSC members who sign a voluntary Attorney Participation Agreement are eligible to receive MDL work product from the PSC and other participating attorneys, and in exchange, participating counsel are required to pay a 7% assessment to the Avandia Common Benefit Fund on all filed and unfiled cases or claims in

---

[1] MDL 1871, Doc. No. 495.

3a

state or federal court in which they share a fee interest.

Members of the Girardi Keese firm served as lead counsel for thousands of Avandia claims being litigated in the California Judicial Counsel Coordinated Proceedings ("JCCP"). Early in Avandia litigation, the Girardi Keese law firm also filed at least four lawsuits directly into this MDL on behalf of Avandia Plaintiffs, and additional claims were transferred to this Court from other federal district courts.

On April 9, 2008, J. Paul Sizemore, Esq., an attorney at Girardi Keese, was appointed to the Avandia MDL's Plaintiffs' Steering Committee ("PSC"). Girardi Keese paid the initial assessment using a firm check. Mr. Sizemore served as the chair of the Science Committee for the PSC while working for Girardi Keese, and therefore Mr. Sizemore and Girardi Keese had access to all documents and work product. Mr. Sizemore participated in producing MDL common benefit work, for which the firm submitted time and costs sheets for reimbursement from the common fund.[2]

Mr. Sizemore left Girardi Keese in early 2009, but Girardi Keese continued to serve as co-counsel with Mr. Sizemore on the cases filed in and transferred to the MDL. Additional Girardi Keese cases were filed in the MDL after Mr. Sizemore left the firm. On May 12, 2009, Keith Griffin, Esq. of Girardi Keese signed an Attorney Participation Agreement, which agreed to the payment of a Common Benefit Fund assessment in exchange for access to MDL work product and the opportunity to maintain a working relationship with the PSC, and which incorporated by reference any court order regarding assessments.   PTO 70, which the Court entered on August 26, 2009, is such an order.

---

[2] The firm was awarded a $200,000 MDL common benefit fee, based on submitted common time for work performed by Mr. Sizemore while he was with Girardi Keese, but the firm returned the check.   March 26, 2014, Hearing Tr. 66:6-16 (Doc. No. 3963).

2

In 2012, Girardi Keese settled its state court and federal court Avandia claims together, in one master settlement agreement. Girardi Keese has subsequently taken the position that it does not owe a 7% assessment on all the settled claims in which the firm has a financial interest, but only owes the assessment to the Common Benefit Fund on a subset of its settled cases. Specifically, Girardi Keese argues that only the Avandia claims it filed in the MDL are subject to the assessment, as it did not use MDL work product to litigate its cases in California. Alternatively, Girardi Keese argues that the Court should interpret the Attorney Participation Agreement to require an assessment only on the Avandia claims Girardi Keese had in its inventory at the time the firm signed the agreement.

*Use of MDL Work Product*

At the hearing, the Court heard testimony from Justin Kaufman of the Heard Robins Cloud law firm ("Heard Robins"). Bill Robins, of Heard Robins, was a leader of the PSC, and the firm was also litigating cases in the same California JCCP trial pool as Girardi Keese. Because the firms had cases in the same JCCP trial pool, Heard Robins observed which MDL materials were sought and used by Girardi Keese in state court litigation. Mr. Kaufman testified that Heard Robbins made all documents GSK produced in the MDL available to Girardi Keese. He also testified that Girardi Keese, along with the other attorneys with cases in the JCCP trial pool, used MDL work product in their responses to GSK's motions for summary judgment, including the opinions of general causation experts Drs. Parisian, Brinton, and Jewell, who were the subject of *Daubert* motions in the MDL. The Court also heard from Thomas Girardi, Esq., who testified that Girardi Keese retained and paid their own experts, but did not specify whether these were general or specific causation experts. The testimony of Mr. Kaufman indicates that Girardi Keese utilized the

3

opinions of the MDL's general causation experts. Moreover, Mr. Kaufman testified that Girardi Keese requested, was provided, and advised the JCCP court that it intended to use other MDL work product in the *LeVoise* case, which was scheduled for trial in California state court. These MDL materials included documents, deposition videotapes, transcripts and cuts, and trial exhibits.

In support of its opposition to the assessment, Girardi Keese asserts that it spent $14 million litigating Avandia claims on behalf of its clients, and argues that this proves that the firm conducted its own discovery and did not utilize MDL work product. At the hearing, Mr. Girardi testified that "we totally prepared these cases outside of any influence of the MDL."[3] The Court does not doubt that Girardi Keese expended significant time and money litigating its cases. Girardi Keese represents thousands of clients, and needed to incur the cost of obtaining and reviewing medical records for each of those clients, regardless of whether or not the firm used MDL work product. In addition, the Court does not doubt that the firm incurred costs associated with state court motions practice and court appearances. However, Girardi Keese's litigation expenses are not sufficient to establish that the firm did not use MDL work product, especially in light of the contrary evidence. The evidence before the Court establishes that Girardi Keese did not rely solely on its own work in advancing its Avandia litigation, but received and relied upon MDL work product to resolve its cases.[4]

*Interpretation of the Attorney Participation Agreement*

Finally, Girardi Keese urges the Court to read its Attorney Participation Agreement to cover only cases Girardi Keese was handling *at the time it was signed* (approximately 400 claims,

---

[3] Tr. 12:13-14.
[4] The Third Circuit has held that the mere availability of MDL discovery material influences a defendant's evaluation of non-MDL plaintiffs' cases, and thus confers a benefit sufficient to trigger an assessment. *See In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liability Litig.*, 582 F.3d 524, 548 (3d Cir. 2009).

4

about 10% of the firm's eventual inventory).[5] The Court declines to adopt this interpretation. The agreement plainly states that GSK would hold back 7% of the gross monetary recovery with respect to each and every assessed case. Four percent would be deducted from attorneys' fees, and 3% from the clients' shares of the gross monetary recovery. The hold-back would apply to "each and every claim, case or action arising from the use of Avandia in which the participating counsel has a financial interest . . . whether the claim, case or action is currently filed in State or Federal Court or is unfiled or is on a tolling agreement, hereinafter collectively [] assessed cases."[6] As the Court reads it, this clause emphasizes signing counsel's financial interest in the case at the time of resolution, and does not exclude any cases based upon the timing of retention. This agreement also expressly incorporates by reference any Order of the Court regarding assessments, and PTO 70 includes similar language, creating an obligation to pay an assessment on all claims in which a firm has a financial interest at the time of resolution. Any other reading would be illogical, as well as inconsistent with the prior application of PTO 70 to other, similarly situated law firms. All cases in Girardi Keese's inventory benefitted from the firm's access to MDL work product, not just its earliest-filed cases, and it would be unjust to read the agreement to require contribution from only a subset of claimants.

Accordingly, upon consideration of the Plaintiffs' Advisory Committee's Motion for Order to Show Cause [Doc. No. 3901], Girardi Keese's responses, the PAC's reply, and the Declaration submitted by counsel for GSK, and after a hearing held in court on March 26, 2014, the Court finds that *all settled claims* in which the Girardi Keese firm has a financial interest, regardless of whether they were filed in state or federal court, and regardless of when the firm was

---

[5] Tr. 22:2-4.
[6] Tr. 26:9-15.

retained, are "assessed cases" and "covered claims" as defined by the terms of the Attorney

*Participation Agreement* and PTO 70, and thus are subject to a *Common Benefit Assessment* under

PTO 70. GSK shall hold back a 7% assessment on the gross recovery, with 4% deducted from

attorneys' fees and 3% from the clients' shares of the gross monetary recovery, and deposit the 7%

assessment in the Avandia Common Benefit Fund. If GSK fails to hold back the assessment for

any or all assessed cases, Girardi Keese shall be responsible for depositing the assessment in the

Common Benefit Fund.

It is so **ORDERED.**

**BY THE COURT:**

May 12, 2014

**CYNTHIA M. RUFE, J.**

6

## CERTIFICATION OF SERVICE

I, David S. Senoff, Esquire, hereby certify that all counsel of record have consented to electronic service pursuant to L.A.R. 31.1(d) and will be served with the *Appendix to the Brief of Appellant Girardi | Keese Law firm Volumes I-III* by the court's electronic docketing system (CM/ECF).

CAROSELLI BEACHLER MCTIERNAN & CONBOY

By: _____ s/ David S. Senoff _____
    DAVID S. SENOFF, ESQUIRE
    PA. ATTY. I.D. NO. 65278

    1845 WALNUT STREET, FIFTEENTH FLOOR
    PHILADELPHIA, PENNSYLVANIA 19103
    T: (215) 609-1350
    F: (215) 609-1351
    DSENOFF@CBMCLAW.COM

    WILLIAM R. CAROSELLI, ESQUIRE
    PA. ATTY. I.D. NO. 00452

    20 STANWIX STREET, SEVENTH FLOOR
    PITTSBURGH, PENNSYLVANIA 15222
    T: (412) 391-9860
    F: (412) 391-7453
    WCAROSELLI@CBMCLAW.COM

    ATTORNEYS FOR APPELLANT
    GIRARDI | KEESE LAW FIRM